**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **ANTONIO R.**, <br><br> *Plaintiff,* <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY**, <br><br> *Defendant.* | No. 25-cv-01980 <br><br> **OPINION** |

<u>**APPEARANCES**</u>:

**Gabriel J. Hermann**
INSLER & HERMANN LLP
One University Plaza Drive, Suite 8
Hackensack, NJ 07601

 *On behalf of Plaintiff.*

**Catherine Elisabeth Hamilton**
**Evelyn Rose Marie Protano**
SPECIAL ASSISTANT UNITED STATES ATTORNEYS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

 *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Antonio R.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Commissioner"). (ECF No. 4). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.   BACKGROUND

The Court recites only those facts necessary for its determination.

### A.  Administrative History

Plaintiff filed applications for a period of disability and Disability Insurance Benefits ("DIB") under Title II, alleging disability beginning July 14, 2021, stemming from pain in his left shoulder, knee, and hip, lumbar spine degeneration, sleep apnea, and post-traumatic stress disorder ("PTSD"). (AR 76, 86, 168–74, 212). Plaintiff met the insured status requirement through December 31, 2026, and therefore needed to establish disability before that date. (AR 14). Plaintiff's claims were initially denied on August 7, 2023, and again upon reconsideration on January 4, 2024. (*Id.*).

Plaintiff thereafter filed a request for a hearing before an Administrative Law Judge ("ALJ") on March 5, 2024. (AR 119–20). A hearing was held on September 24, 2024, at which Plaintiff, who appeared with counsel, and a vocational expert ("VE") testified. (AR 38–74). On October 10, 2024, the ALJ issued a partially favorable decision, finding Plaintiff not disabled prior to September 25, 2024, but disabled as of that date based on his age. (AR 14–31).

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

Plaintiff sought review by the Appeals Council, which denied the request for review on January 17, 2025, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–6). Plaintiff thereafter timely commenced this action pursuant to 42 U.S.C. § 405(g). (ECF No. 1).

**B. Plaintiff's Background and Testimony**

Plaintiff was born in October 1969 and was 51 years old on the alleged onset date. (AR 76). He completed high school and previously worked as a sanitation engineer for the New York City sanitation department, where his job responsibilities included driving a garbage truck and collecting garbage. (AR 57–58, 213–14). At the time of the ALJ's decision, Plaintiff was nearing his 55th birthday, which placed him at the boundary between age categories under the Medical-Vocational Guidelines. (AR 30–31).

At the administrative hearing, Plaintiff testified that he stopped working in July 2021 due to pain in his lower back, neck, and knees, as well as PTSD stemming from his military service in Iraq. (AR 48–50). Plaintiff stated that he could not sit or stand for extended periods and estimated that he could stand for approximately five minutes at a time. (AR 50–51). He testified that he spent a significant portion of the day lying on his side to alleviate pain. (*Id.*). Plaintiff further stated that he uses a cane when walking or holds onto someone or something for support. (AR 52). He described shoulder pain that limits his ability to lift heavy objects. (AR 55).

Regarding his mental symptoms, Plaintiff testified that he experiences difficulty concentrating. (AR 51). He explained that he had difficulty sleeping due to the pain and nightmares. (AR 49–50). He also stated that, due to his PTSD, being outside made him nervous and being around other people made him uncomfortable. (AR 52–54).

In his function report, Plaintiff reported performing some limited daily activities, including attempting light household chores such as cleaning and laundry as well as driving to doctor's

appointments. (AR 235–39). A third-party function report completed by Plaintiff's daughter described similar limitations. (AR 242–49).

### C. Medical History

The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive.

With respect to his musculoskeletal impairments, Plaintiff sought treatment for neck, shoulder, low back, hip, and knee pain in January and February 2020—prior to the alleged onset date. (AR 625–631, 663–65). He received acupuncture treatments which he felt helped his symptoms. (*Id.*).

Thereafter, imaging in April 2022 showed mild straightening of the cervical spine, possible degenerative disc disease at C5–C6, and mild osteoarthritis. (AR 715, 1264). Lumbar spine imaging showed possible degenerative disc disease at L5–S1 with mild osteoarthritis. (AR 717, 1266). A left knee X-ray was unremarkable. (AR 719, 1268). An MRI of the left knee in May 2022 revealed a full-thickness chondral fissure along the mid weight-bearing medial femoral condyle, near full-thickness chondral fissuring along the patellar facet, and a small Baker's cyst.[2] (AR 338, 711–13, 789, 968, 1260–62).

Neurologist Tatyana Yuzbashyan, M.D., examined Plaintiff in May 2022 for complaints of chronic back pain, neck pain radiating to the shoulders, and migraine headaches. (AR 358–60). On examination, Plaintiff demonstrated 5/5 strength bilaterally, intact sensation and coordination,

---

[2]   The medical records at times refer to an MRI of the right knee, which appears to be a typographical error. Indeed, Plaintiff also references an MRI of both the left and right knee, (Pl.'s Br., ECF No. 9-1 at 9-10), and the ALJ likewise referenced an MRI of the right knee. (AR 21). The Court agrees with the Commissioner that this MRI appears to be of the left knee since it was ordered in response to his complaints of left-knee pain and compared with his left knee X-ray. (Def.'s Br., ECF No. 11 at 21 n.6).

mild lumbar tenderness with muscle spasm, and an antalgic gait. (AR 359).

In June 2022, Plaintiff reported left knee pain exacerbated by sitting and stairs but also reported driving frequently, going to the gym and using a bike. (AR 320, 1696). Examination showed a stable gait without an assistive device, full lumbar range of motion, the ability to squat with good balance, and no muscle atrophy. (AR 320–21). Physical therapy was recommended. (AR 321).

During physical therapy in July 2022, Plaintiff complained of knee pain but exhibited a minimally antalgic and stable gait, full lower extremity strength, intact sensation, and no use of an assistive device. (AR 313–14). Orthopedic evaluation that month documented joint line tenderness but no abnormal gait, and Plaintiff declined injections or oral medication, wanting to continue physical therapy. (AR 1086–87, 1673–74). An MRI of the left knee showed mild to moderate degenerative joint disease. (*Id.*).

Subsequent physical therapy notes from July through September 2022 documented reduced pain and increased strength, independent ambulation without gait aids, and a stable, minimally antalgic gait. (AR 1068–85). By November 2022, Plaintiff reported he had regained approximately 95% of his strength and function following therapy and did not require an assistive device.[3] (AR 996–97). The following month, in December 2022, examinations documented full strength in the upper and lower extremities and steady gait without the use of assistive devices. (AR 951).

In June 2023, Plaintiff underwent an orthopedic consultative examination with Juan Carlos Cornejo, D.O. (AR 1223–29). Plaintiff reported longstanding pain in the shoulders, back, hips, and

---

[3] Indeed, these records indicate that Plaintiff was still regularly working without restrictions at the sanitation department in November 2022, which seemingly contradicts his testimony that he physically stopped working in July 2021. (AR 48, 996). However, the ALJ did not remark on this discrepancy and the Commissioner does not raise it.

left knee and difficulty with standing, walking, and other activities. (AR 1223–24). He reported being able to perform light household activities and personal care. (AR 1225). Plaintiff used a cane but deferred most of the physical examination due to pain. (AR 1226). Dr. Cornejo observed reduced cervical and lumbar range of motion but no spasm or tenderness. (AR 1225). He did not provide a functional opinion. (AR 1225–29).

At a June 2023 neurology follow-up with Dr. Yuzbashyan, Plaintiff reported neck pain radiating to both shoulders, numbness and tingling in the left arm and fingers, and perceived left-hand weakness. (AR 1347–48). Examination showed full strength, except for 4/5 left grip strength, as well as an antalgic gait and mild lumbar tenderness with muscle spasm. (AR 1351). Dr. Yuzbashyan discussed pain management. (AR 1352–53). In August and October 2023, similar findings were noted, including continued reports of left-hand weakness and antalgic gait. (AR 2058–59, 2132–33).

On September 27, 2023, Sharon Kandel, D.O., evaluated Plaintiff for cervical neck pain as well as paresthesia/weakness. (AR 2075–78). Plaintiff reported difficulty holding large objects. (AR 2076). Examination showed muscle wasting in the left-hand hypothenar muscles, 4/5 strength in the left-hand grip and elbow, decreased sensation in the left fourth and fifth digits, and a positive Tinel's sign at the cubital tunnel. (*Id.*). However, an electromyography and nerve conduction study of the left upper extremity was normal. (AR 2077–78). Thereafter, in July 2024, a pain management evaluation documented a non-antalgic gait without use of a cane and 5/5 strength, though Plaintiff continued to complain of numbness and tingling in his left arm and fingers. (AR 1858–59).

With respect to migraines, Plaintiff reported experiencing migraine headaches for years dating back to his military service in Iraq in 2005. (AR 358, 413). The Veterans Administration

("VA") assigned Plaintiff a 30% service-connected disability rating for migraine headaches. (AR 384). He described headaches occurring several times per month, lasting up to six hours, sometimes associated with photophobia and phonophobia. (AR 358, 1351). Dr. Yuzbashyan prescribed prophylactic treatment, including Topiramate, Vitamin B2, magnesium, and use of a Cefaly device. (AR 360, 1353, 2137). Plaintiff reported to Dr. Yuzbashyan in June 2023 that his headaches were "mostly mild" and that he did not remember trying Topiramate. (AR 1348). The record also contains multiple treatment notes documenting no constant or new headaches. (AR 785, 820, 965, 1045, 1121, 1366, 1417, 1447, 1561, 1637, 1702, 1760, 1902, 2004).

State agency medical consultants Mary McLarnon, M.D., and Gary Smith, M.D., reviewed the record in July and December 2023, respectively. (AR 81–82, 90–91). They described functional limitations consistent with light work, including lifting 20 pounds occasionally and standing and walking for approximately six hours in an eight-hour workday. (*Id.*). They also assessed some postural limitations, limiting Plaintiff to only occasionally climbing ladders, ropes, and scaffolds, and occasionally crawling. (*Id.*). Neither assessed manipulative limitations. (*Id.*).

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir.

2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see also, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309,

2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

## B.  Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

On appeal, the plaintiff bears the burden of showing not merely that the ALJ erred, but that the error was harmful. *Peter G. v. Comm'r of Soc. Sec.*, No. 23-3797, 2024 WL 3518117, at *3 (D.N.J. July 24, 2024); *see also Holloman v. Comm'r Soc. Sec.,* 639 F. App'x 810, 814 (3d Cir. 2016).

## III. <u>ALJ DECISION</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 14, 2021. (AR 16).

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, degenerative joint disease of the bilateral shoulders, obstructive sleep apnea, obesity, PTSD, major depressive disorder, and mild neurocognitive disorder. (AR 17). The ALJ found that Plaintiff's hypertension was non-severe because there was no evidence that it had more than a minimal effect on his work-related activities. (*Id.*).

At step three, the ALJ found that, since the alleged onset date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 17–19). The ALJ explained that the record did not document clinical signs, symptoms, or laboratory findings establishing listing-level severity, and that no medical source opined that Plaintiff's impairments equaled a listing. (AR 17).

For Plaintiff's spinal impairments, the ALJ considered Listings 1.15 and 1.16. (AR 17–18). As to Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), the ALJ acknowledged evidence of muscle weakness, sensory changes, or decreased reflexes, and imaging consistent with nerve root compromise in the lumbosacral spine, but found the listing was not met because the record did not show a documented medical need for a walker, bilateral canes/crutches, or a wheeled mobility device requiring both hands. (*Id.*). Nor did the record show the requisite combination of inability to use an upper extremity for fine or gross movements together with a documented medical need for a one-handed assistive device requiring the other upper extremity. (*Id.*). As to Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), the ALJ found the listing was not met because the record did not demonstrate lumbar spinal stenosis compromising the cauda equina with non-radicular neurological signs, and did not show imaging or operative-report findings consistent with cauda equina compromise. (*Id.*). The ALJ again noted the absence of the required documented medical need for specified assistive devices. (AR 18).

For Plaintiff's bilateral shoulder degenerative joint disease, the ALJ considered Listing 1.18 (abnormality of a major joint in any extremity). (*Id.*). The ALJ found the listing was not met because, during the period at issue, there was no documented medical need for an assistive device requiring use of one or both hands and the record did not support the requisite inability to use one or both upper extremities for fine or gross movements. (*Id.*).

Finally, for Plaintiff's mental impairments, the ALJ evaluated Listings 12.02, 12.04, and 12.15, and found that the "paragraph B" criteria were not satisfied because Plaintiff did not have at least one extreme or two marked limitations in each of the four functional areas— understanding/remembering/applying         information;         interacting         with         others;

11

concentrating/persisting/maintaining pace; and adapting/managing oneself—rather, he had only moderate limitations. (AR 18–19). The ALJ also found the "paragraph C" criteria were not met because the record did not show repeated episodes of decompensation or inability to function outside of a highly supportive living arrangement. (AR 19).

Before proceeding to step four, the ALJ determined that, through September 24, 2024, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to additional limitations. (AR 19–20). Specifically, the ALJ found that Plaintiff could frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; and occasionally crawl. (*Id.*). He was limited to occasional overhead reaching. (AR 20).

With respect to mental limitations, the ALJ restricted Plaintiff to understanding, remembering, and carrying out simple instructions; using judgment to make simple work-related decisions; dealing with occasional changes in a routine work setting; having occasional interaction with the public; and performing work that does not require specific production rates, such as assembly-line work or work involving hourly quotas. (*Id.*).

In reaching this determination, the ALJ considered Plaintiff's testimony regarding pain; functional limitations, including difficulty sitting, standing, and walking; and symptoms of PTSD and depression; but found that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the objective medical evidence and other evidence of record. (AR 20–21). The ALJ discussed imaging studies of the cervical and lumbar spine and knees; treatment notes reflecting generally full motor strength aside from reduced left grip strength at times; largely conservative treatment, including physical therapy; and physical examinations showing a stable and normal or minimally antalgic gait. (AR 21–24). The ALJ also

addressed Plaintiff's mental health treatment, noting persistent symptoms but largely intact thought processes and appropriate behavior. (AR 24–26). The ALJ also considered Plaintiff's reports of his daily activities, including being able to dress himself, perform simple chores, and drive. (AR 26).

The ALJ found the state agency medical opinions persuasive to the extent they supported a reduced range of light work, but concluded that an additional reaching limitation was warranted based on the record as a whole. (AR 27). Accordingly, the ALJ determined that Plaintiff retained the above-described capacity for a limited range of light, simple work during the relevant period. (AR 27–28).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (AR 28–29). Relying on the testimony of the vocational expert, the ALJ determined that Plaintiff's prior employment as a garbage collector and garbage collector driver constituted medium to very heavy work. (AR 29). Given the RFC limiting Plaintiff to a reduced range of light work, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (AR 29). Accordingly, the ALJ proceeded to step five of the sequential evaluation.

At step five, the ALJ determined that, prior to September 25, 2024, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC. (AR 29–30). Relying on the testimony of the vocational expert, the ALJ identified representative occupations such as mail clerk, package sorter, and office helper, each existing in significant numbers in the national economy. (AR 29–30). The ALJ concluded that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (AR 30). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act prior to September 25, 2024. (AR 30).

However, the ALJ further determined that, beginning on September 25, 2024, Plaintiff's age category changed to "advanced age" pursuant to a borderline age analysis. (AR 30–31). Applying the Medical-Vocational Guidelines for this age category, the ALJ concluded that there were no jobs existing in significant numbers that Plaintiff could perform as of that date and therefore found him disabled as of September 25, 2024. (AR 31).

## IV. <u>DISCUSSION</u>

In his appeal, Plaintiff makes two principal arguments: 1) that the ALJ failed to properly consider certain impairments at step two and in formulating the RFC and 2) that the ALJ relied on VE testimony that conflicted with the RFC. As explained below, neither is persuasive.

### A. The ALJ Properly Considered Plaintiff's Impairments and the RFC Determination Is Supported by Substantial Evidence

Plaintiff contends that the ALJ failed to adequately consider certain impairments—specifically, alleged left upper extremity weakness, migraines, left knee impairment, and the asserted need for a cane—at step two or in formulating the RFC. (Pl.'s Br., ECF No. 9-1 at 22–26). The Court will address each in turn.

At the outset, the Court notes that even if the ALJ erred in declining to designate a particular impairment as "severe" at step two, such an error is harmless where the ALJ proceeds beyond step two and considers the impairment in the RFC assessment. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). Here, the ALJ found multiple severe impairments and continued the sequential evaluation. (AR 17–31). Accordingly, the relevant question is whether the ALJ adequately considered impairments and/or symptoms associated with the challenged conditions when formulating the RFC. Furthermore, "the ALJ need only include in the RFC those limitations which he finds to be credible." *Salles*, 229 F. App'x at 147 (citation omitted). And it is well established that, while a

14

claimant's subjective complaints must be considered, "the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011).

### 1. Left Upper Extremity Weakness

With respect to Plaintiff's alleged left upper extremity weakness, the question before the Court is not whether the record could theoretically support a finding of additional functional limitations, but whether substantial evidence supports the ALJ's determination. *See Malloy*, 306 F. App'x at 764. The Court concludes that it does.

The ALJ's decision confirms that the ALJ did not ignore either Plaintiff's complaints or objective medical evidence. Indeed, the ALJ expressly found severe degenerative joint disease of the bilateral shoulders. (AR 17). In assessing the RFC, the ALJ acknowledged examination findings reflecting reduced (4/5) left grip strength, reported numbness and tingling in the left arm and last two fingers, and that examinations at times documented an antalgic range of motion of the shoulders.[4] (AR 23–24).

But at the same time, the ALJ considered objective testing that did not corroborate disabling manipulative limitations. Specifically, the ALJ noted diagnostic testing, including motor nerve conduction and electromyography, demonstrating a normal left upper extremity. (AR 23

---

[4] As the Commissioner notes, (Def.'s Br., ECF No. 11 at 16–17), an ALJ is not required to specifically name every alleged impairment in their analysis. *See Frampton v. Astrue*, 405 F. App'x 112, 113 (9th Cir. 2010) ("The ALJ adequately considered all symptoms arising from [Plaintiff's] alleged impairments, even though the ALJ did not mention every impairment by name.").

(citing AR 2077–78)).[5] In addition, examinations documented generally full motor strength aside from mildly reduced left grip strength. (AR 23–24). The ALJ was entitled to weigh these conflicting findings in determining the RFC. *See, e.g.*, *Phoy v. Barnhart*, No. 05-2791, 2006 WL 680927, at *4 (E.D. Pa. Mar. 10, 2006) ("The ALJ must weigh evidence, resolve evidentiary conflicts, and determine credibility." (citation omitted)). Based on the totality of the record, the ALJ limited Plaintiff to light work with additional limitations, including only occasional overhead reaching, thus accounting for the cervical spine and shoulder symptoms. (AR 19–20).

Though Plaintiff argues that the ALJ failed to account for the "established functional limitations of the left hand," he points to no objective findings or medical opinions beyond those already considered by the ALJ that would compel a finding of additional manipulative limitations. (Pl.'s Br., ECF No. 9-1 at 22–23). Indeed, the state agency physicians—who assessed no manipulative limitations—were found generally persuasive, and the ALJ actually imposed greater limitations than those consultants recommended. (AR 27; Def.'s Br., ECF No. 11 at 18). As explained above, it is not this Court's role to reweigh evidence and substitute its own judgment in lieu of the ALJ's. On this record, substantial evidence supports the ALJ's decision.

### 2. Migraines

Plaintiff next argues that the ALJ erred by not identifying migraines as a medically

---

[5] These tests were conducted by Dr. Kandel and indicate that the ALJ considered her findings, notwithstanding Plaintiff's argument to the contrary. (Pl.'s Br., ECF No. 9-1 at 23; Pl.'s Reply, ECF No. 12 at 6). Though the ALJ did not explicitly remark on Dr. Kandel's observation of "muscle wasting" in the left hand or a positive Tinel's sign, an ALJ is not required to "set forth and analyze every piece of evidence in the record." *Santiago v. Barnhart*, No. 02-4506, 2006 WL 8449259, at *4 (D.N.J. Aug. 8, 2006), *aff'd sub nom.*, *Santiago v. Comm'r of Soc. Sec.*, 273 F. App'x 211 (3d Cir. 2008) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Rather, "the ALJ must note the essential considerations upon which the decision was based, with sufficient specificity so as to enable the reviewing court to decide whether the disability determination was supported by substantial evidence." *Id.*

determinable impairment and by subsequently failing to incorporate time-off-task limitations. (Pl.'s Br., ECF No. 9-1 at 23–24). The Court disagrees.

At step two, a claimant must establish a medically determinable impairment through objective medical evidence. A "statement of symptoms, a diagnosis, or a medical opinion is insufficient" without supporting objective evidence, such as medical signs or laboratory findings. *Danita F. v. Comm'r of Soc. Sec.*, No. 20-13285, 2022 WL 1165724, at *8 (D.N.J. Apr. 20, 2022). Thus, Plaintiff was required to identify objective evidence demonstrating a primary headache disorder and resulting functional limitations.[6]

Plaintiff first claims that he "reported that migraine headaches interfered with his ability to work" in his disability application. (Pl.'s Br., ECF No. 9-1 at 23 (citing AR 254)). First, as explained above, an ALJ is not required to credit subjective complaints. Moreover, the cited record reflects only that Plaintiff was evaluated or treated for migraines; it does not indicate that he alleged disabling limitations attributable to headaches. (AR 254). Nor did Plaintiff testify that his migraines were disabling at the hearing, specifically mention migraines in his function report, or identify migraines as a basis for disability in his application. (Def.'s Br., ECF No. 11 at 18 n.4); (AR 47–57, 76, 86, 212, 234–41).

The record does reflect that Plaintiff was diagnosed with chronic migraines and prescribed medication. (AR 360, 1348). But the ALJ acknowledged those reports, specifically treatment with

---

[6] *See Ungemach v. Comm'r of Soc. Sec.,* No. 18-04987, 2019 WL 3024858, at *7 (D.N.J. July 11, 2019) ("Other than Plaintiff's self-reporting that she experiences migraines, which her physicians have recorded in their records, Plaintiff does not cite to one medical record that reveals any office visit specific to her migraines, or documents how her migraine headaches impact her functioning. The ALJ cannot be faulted for not considering Plaintiff's migraine headaches in the RFC assessment because the only record of Plaintiff's migraines is Plaintiff's conclusory statement that she experiences them.").

Topiramate. (AR 22–23). However, the ALJ also noted that Plaintiff at times reported only mild headaches.[7] (AR 23 (citing AR 1348)). Thus, the ALJ did not ignore the condition; rather, the decision reflects consideration of Plaintiff's headache complaints and the largely conservative course of treatment reflected in the record.

Plaintiff argues in his reply that his prescription for Topiramate and recommended use of a Cefaly device is sufficient to establish a medically determinable impairment by itself. (Pl.'s Reply, ECF No. 12 at 4 (citing Social Security Ruling ("SSR") 19-4p). This argument is unpersuasive. SSR 19-4p makes clear that a primary headache disorder must be established by objective medical evidence from an acceptable medical source. 2019 WL 4169635, at *5–6. While response to treatment may inform the evaluation of a primary headache disorder, adjudicators must assess whether symptoms improved, worsened, or remained stable despite treatment, and consider medical opinions addressing functional abilities. 2019 WL 4169635, at *6. Here, the record does not establish persistent or worsening migraines despite treatment, nor do any physicians opine as to any functional limitations due to migraines. As the ALJ noted, Plaintiff reported that his migraines were "mostly mild," and although he took vitamin B2 and magnesium, he "does not remember trying topiramate." (AR 1348). Indeed, the subsequent note Plaintiff cites similarly reflects that it was "not clear if [he] tried topiramate or if it[] helped," that his headaches were "milder," and that he "would try [a] cefaly device." (AR 1353). The state agency consultants, whose opinions the ALJ found generally persuasive, also considered the fact that Plaintiff was assessed with migraines but did not find any associated functional limitations. (*See* AR 76–84). On this record, the Court cannot conclude that the ALJ erred in not finding a medically

---

[7] The Commissioner also notes that elsewhere in the record, treatment notes documented no constant or new headaches. (Def.'s Br., ECF No. 11 at 19).

determinable impairment under SSR 19-4p. In any event, because the ALJ explicitly considered Plaintiff's reports of migraines and Topiramate prescription in the RFC analysis, any step-two error would be harmless. *See Salles*, 229 F. App'x at 145 n.2; *Rutherford*, 399 F.3d at 553 (concluding that "a remand is not required here because it would not affect the outcome of the case").

Finally, Plaintiff relies on a VA disability rating assigning 30% for migraines. (Pl.'s Br., ECF No. 9-1 at 24). But disability determinations by other agencies are not binding on the Commissioner, and an ALJ is free to disregard them so long as they consider any objective medical findings underlying those determinations. *See* 20 C.F.R. § 404.1520b(c)(1); *Coria v. Heckler*, 750 F.2d 245, 247–48 (3d Cir. 1984). Plaintiff has not identified any objective findings demonstrating that his migraines necessitated limitations beyond those incorporated in the RFC. Nor has he cited any medical opinion assessing specific off-task restrictions attributable to migraines.

In short, even assuming that the ALJ erred in not finding migraines to be a medically determinable impairment, Plaintiff has pointed to no evidence establishing that this alleged impairment resulted in significant functional limitations and the decision reflects that the ALJ considered the condition in assessing the RFC. Any error was therefore harmless.

### 3. Left-Knee Impairment

Next, the Court is not persuaded by Plaintiff's argument that the ALJ erred by failing to consider his left-knee impairment in formulating the RFC. He contends he cannot perform the standing and walking demands of light work, particularly in light of left knee MRI findings and episodes of antalgic gait. (Pl.'s Br., ECF No. 9-1 at 24–25). The ALJ, however, discussed the MRI

findings[8], Plaintiff's reports of knee pain, and treatment notes documenting both antalgic and normal or minimally antalgic gait. (AR 21–24). Importantly, treatment notes reflect that Plaintiff's knee pain significantly improved with physical therapy and the ALJ noted that Plaintiff reported that he had regained 95% of his original strength and function with physical therapy. (AR 22 (citing AR 996)). In addition, examinations documented a stable and normal or minimally antalgic gait without an assistive device. (AR 997, 1068–85, 1858, 2005). Further, the state agency physicians expressly considered imaging of the left knee and nonetheless concluded that Plaintiff could stand and walk for approximately six hours in an eight-hour workday. (AR 81–82, 90–91). The ALJ found those assessments generally persuasive. (AR 27).

Plaintiff has failed to adduce any objective evidence or medical opinions that the ALJ ignored or improperly discounted. Again, this Court's role is not to reweigh competing evidence but to determine whether substantial evidence supports the ALJ's findings; here, it does. *See, e.g.*, *Fargnoli*, 247 F.3d at 38.

### 4.   Use of a Cane

Finally, Plaintiff argues that the ALJ's decision is deficient because it does not account for his use of a cane. (Pl.'s Br., ECF No. 9-1 at 25–26). The Commissioner responds that the record does not establish medical necessity. (Def.'s Br., ECF No. 11 at 24–26). The Court agrees with the Commissioner.

An ALJ is not required to address use of a cane in formulating the RFC unless there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *Howze v. Barnhart*, 53 F. App'x

---

[8]   As explained previously, although the ALJ referenced an MRI of the "right" knee, the Commissioner acknowledges this appears to be a typographical error, as the cited imaging corresponds to the left knee. (AR 21; Def.'s Br., ECF No. 11 at 21 n.6).

218, 222 (3d Cir. 2002) (quoting SSR 96-9p). In *Howze*, the record included a reference by a physician to a "script" for a cane and the physician also checked the box on a form indicating "hand-held assistive device medically required for ambulation." *Id.* The record also contained "multiple references to the fact that appellant uses a cane but no discussion of its medical necessity." *Id.* The Third Circuit found this insufficient to establish medical necessity. *Id.*

Here, the record similarly does not contain documentation establishing medical necessity. Plaintiff's testimony as to his use of the cane, (AR 52), is plainly insufficient standing alone. Plaintiff further relies on the fact that he appeared with a cane at a June 2023 consultative examination by Dr. Cornejo. (Pl.'s Br., ECF No. 9-1 at 25; AR 1226). But he acknowledges that Dr. Cornejo "did not address whether the cane was medically necessary" or "his ability to walk without the cane." (Pl.'s Br., ECF No. 9-1 at 25). Finally, Plaintiff points to "gait training physical therapy" instructing him on proper use of a cane in June 2023. (*Id.* (citing AR 1357–58)). This isolated notation is even less than the documentation the Third Circuit concluded did not satisfy the medical-necessity requirement in *Howze*. 53 F. App'x at 222. Furthermore, multiple examinations noted normal or non-antalgic gait without use of an assistive device. (AR 996–97, 1858, 2005). On this record, the ALJ did not err in declining to incorporate cane-related restrictions

into the RFC.[9] Plaintiff has failed to establish harmful error since there is no evidence in the record that the cane was medically required.[10]

In sum, the Court finds that the ALJ adequately considered Plaintiff's impairments—severe and non-severe—in assessing the RFC, and that the RFC is supported by substantial evidence.

### B. The VE's Testimony Is Consistent with the RFC

Plaintiff next argues that the ALJ improperly relied on VE testimony identifying jobs with a Reasoning Level of 2, which he contends conflicts with the RFC limitation to understanding, remembering, and carrying out "simple instructions" and to only occasional changes in a routine work setting. (Pl.'s Br., ECF No. 9-1 at 26–29). But the Third Circuit has squarely addressed and rejected this argument. In *Money v. Barnhart*, the court held that "[w]orking at reasoning level 2 does not contradict the mandate that [a claimant's] work be simple, routine, and repetitive." 91 F. App'x 210, 215 (3d Cir. 2004); *see also Jones v. Astrue*, 570 F. Supp. 2d 708, 716 (E.D. Pa. 2007), *aff'd sub nom., Jones v. Comm'r of Soc. Sec.*, 275 F. App'x 166 (3d Cir. 2008) (collecting cases). Indeed, the Third Circuit has further declined to adopt a bright-line rule that a limitation to simple and routine work conflicts even with the higher Reasoning Level 3. *Zirnsak v. Colvin*, 777 F.3d

---

[9]  Plaintiff points to the fact that the VE, in response to a hypothetical question from the ALJ, testified that an individual who needed a cane for all ambulation would not be able to perform any of the jobs the VE identified. (Pl.'s Br., ECF No. 9-1 at 25–26); (AR 62). However, as the Commissioner points out, the ALJ was not bound by a hypothetical premised upon a finding that she ultimately did not adopt. (Def.'s Br., ECF No. 11 at 25–26 n.7 (citing *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 690 (3d Cir. 2020) ("The ALJ's subsequent hypothetical question … does not bind him to the premise of the question, nor to the expert's answer …"))).

[10]  Although the Commissioner does not rely on this, the Court also notes that the ALJ appears to have determined that no hand-held assistive device was medically required in her evaluation at Step 3, (AR 17–18), and she was not required to "adhere to a particular format in conducting" her analysis. *Jones*, 364 F.3d at 505.

607, 618 (3d Cir. 2014). If no categorical conflict exists at Reasoning Level 3, then, *a fortiori*, none exists at the less demanding Reasoning Level 2.

Plaintiff attempts to distinguish these cases on the ground that they considered limitations to "simple tasks" rather than "simple instructions." (Pl.'s Reply, ECF No. 12 at 7). The Court is not persuaded by this semantic distinction.[11] Indeed, this Court has already held that "reasoning level 2 jobs do not inherently conflict with a limitation to *simple instructions* or simple tasks." *Robin S. v. Comm'r of Soc. Sec.*, No. 24-06904, 2025 WL 1431084, at *9 (D.N.J. May 19, 2025) (emphasis added).

To the extent Plaintiff argues that there is a conflict between Reasoning Level 2 and his limitation to occasional changes in a routine setting, the Court agrees with the Commissioner that Reasoning Level 2 is consistent with this limitation. (Def.'s Br., ECF No. 11 at 28 n.9 (citing *Mazurek v. Kijakazi*, No. 21-5103, 2023 WL 5617786 (E.D. Pa. Aug. 30, 2023)); *see also Padilla v. Saul*, 852 F. App'x 277, 279 (9th Cir. 2021) (finding no conflict between Reasoning Level 2 jobs and limitation to "only occasional changes to the essential job functions"); *Cervantes v. O'Malley*, No. 22-1565, 2024 WL 1173827, at *6 (E.D. Cal. Mar. 19, 2024) ("District Courts have repeatedly determined plaintiffs who can deal with work changes on an occasional basis are not precluded from dealing with 'a few concrete variables' as required under Reasoning Level 2.").

In sum, the RFC here limited Plaintiff to simple instructions, simple work-related decisions, and only occasional changes in a routine setting. (AR 19–20). The VE identified jobs—

---

[11] Plaintiff relies on *Meloni v. Colvin*, 109 F. Supp. 3d 734, 743 (M.D. Pa. 2015). (Pl.'s Reply, ECF No. 12 at 7). Even if that case were binding on this Court, it is distinguishable. In that case, the RFC included a limitation to "simple, one-or-two step instructions," thereby expressly incorporating the language of Reasoning Level 1. 109 F. Supp. 3d at 741–43. Thus, the court in that case found a conflict with jobs that required higher reasoning levels. *Id.* Because the ALJ did not include such a specific limitation here, the Court finds no conflict as explained above.

such as sorter and office helper—that require Reasoning Level 2. (AR 29–30). No apparent unresolved conflict exists between those jobs and the limitations in the RFC. Because there was no conflict with the DOT, the ALJ was not required to elicit further explanation from the VE. *See* SSR 00-4p, 2000 WL 1898704, at *2. And because the ALJ identified at least one job that existed in significant numbers which Plaintiff could perform, her determination is therefore supported by substantial evidence. *See Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014).

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**

24